ROBERT M. YASPAN, SBN 051867
JOSEPH G. McCARTY, SBN 151020
DEBRA R. BRAND, SBN 162285
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, California 91367
Telephone: (818) 905-7711
Facsimile: (818) 501-7711

*[Proposed] General Counsel for Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE:<br><br>TBH19 LLC, a Delaware limited liability company<br><br>            Debtor | Chapter No.: 11<br><br>Case No.: 2:19-bk-23823-VZ<br><br>DECLARATION OF LEONARD ROSS IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO: (A) USE CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; (B) GRANT REPLACEMENT LIENS; AND (C) SET FINAL HEARING<br><br>Date:  [To Be Set]<br>Time:  [To Be Set]<br>Place:  Courtroom 1368<br>          255 E. Temple<br>          Los Angeles, CA 90012 |

1

I, Leonard Ross, hereby declare as follows:

1. I am the manager of LMR-TBH, LLC ("LMR") which is the Manager of Debtor and Debtor-in-Possession TBH19 LLC ("TBH19") or ("Debtor") in the above-captioned bankruptcy. I have personal knowledge of the facts set forth herein and if called as a witness I could, and would, so competently testify hereto.

2. On November 24, 2019 (the "Petition Date"), the Debtor commenced its reorganization by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is continuing in possession of its assets and is operating and managing its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. TBH19 LLC, the herein Chapter 11 Debtor and Debtor-in-Possession ("Debtor"), hereby files this emergency motion ("Emergency Motion") seeking authority to use cash collateral to pay the Debtor's ordinary and necessary expenses retroactive to the date of the filing and for a period of about 120 days (through March 31, 2020) as set forth in the budget ("Budget") attached as Exhibit "A" to the proposed Order, which is itself attached hereto as Exhibit "1".

4. It is imperative that the Debtor obtain immediate Court authority to use cash collateral in order to avoid immediate and irreparable harm to the Debtor's business. Debtor owns an approximately 40,000 square foot Beverly Hills estate located at 1011 N. Beverly Drive, Beverly Hills, California 90210 (the "Property" or "Beverly House"). The Beverly House is an estate that was owned by William Randolph Hearst and occupied by him and his paramour, Marion Davies, the final years of Mr. Hearst's life.

5. The Property is approximately 3.7 acres with original landscaping by the late well known landscape architect, Paul Thiene. The Beverly House features hand-carved woodwork, two projection rooms, double master suites, four guest suites, quarters for four

servants (with a total of 17 bedrooms and 29 bathrooms), a commercial kitchen, an art-deco nightclub, waterfalls, ponds, a swimming pool, and a separate guest house with full amenities. The Property has a present value of about $125,000,000.

6. The Beverly House is rented by Debtor on a daily, weekly, or monthly basis for use as a temporary residence, as a movie set, and various events. In 2018, the gross rent income for the Property was in excess of $3,000,000.

7. Debtor is beneficially owned by Leonard M. Ross, Individually and as Trustee of the Leonard M. Ross Revocable Trust (u/d/T 12-20-85) (collectively, "Ross") . Ross has beneficially owned the Beverly house since in or about 1976. In conjunction with some bankruptcies filed by entities I owned, I filed a personal Chapter 11 proceeding in this Court in or about September 2010 which was successfully reorganized.

8. I refinanced the Property in or about 2015. As part of the refinancing, at the secured creditor's [ DBD Credit Funding LLC ("DBD")] insistence, the Property was transferred to Debtor in or about 2015. Debtor was formed for the purpose of making the loan. The Property is Debtor's main asset but it also owns some office equipment and pool and miscellaneous equipment related to the Property.

9. I live at the Property as my principal residence as part of my duties in managing and renting the Property. The Property has been my principal residence since I purchased it in or about 1976 and of my children.

10. There are three alleged secured creditors who are allegedly secured by the Property. DBD is the first in priority with a disputed claim of approximately $47,500,000 (the "First"). Glorya Kaufman individually and as Trustee of the Glorya Kaufman Trust (collectively "Kaufman") is the second priority secured claim with a disputed outstanding claim of about $1,100,000 plus approximately $3,400,000 already paid by Debtor (the "Second").

HAR-BD LLC ("HAR") is the third priority secured claim with a disputed claim of about $19,000,000 plus accrued interest (the "Third").

11.     After the First was recorded DBD proceeded to assign fractionalized interest in the note for the First to various entities it claims to control. However, DBD failed to assign corresponding interests in the First's security (the deed of trust) and no assignments of the deed of trust were recorded calling the security into question. The Kaufman Second is based upon a paid guaranty of amounts claimed due on the First. Debtor was current on its payment to Kaufman for several years commencing December 2015. During July 2019 when DBD declared a default on the First, Kaufman failed to make the payments she was required to under the guaranty and instead exercised her alleged right to purchase the First. The transaction failed to close and both the First and Second sued each other claiming breaches of the agreements between them and the guaranty. The breaches of the guaranty and the failure to record assignments of the first deed of trust also call the amounts, security, and priority of the secured claims on the Property into question.

12.     DBD also filed a UCC-1 financing statement regarding Debtors alleged personal property which is also a disputed claim as to the alleged amounts, the alleged security, and the alleged priority of any such claims. The only personal property owned by the Debtor is some office equipment and a few items such as some pool equipment that have been valued at approximately $26,955 in Debtor's schedules as well as accounts receivable valued at approximately $15,000. The rest of the personal property located at the Property belongs to Ross.

13.     Debtor has not presently been able to determine the alleged amounts, the alleged security, and the alleged priority of the alleged secured creditors and Debtor intends to request that the Court determine the validity, amount and priority of the alleged secured claims as this case moves forward.

4

14. The First sued Debtor alleging a default on the First and sought a receiver for the Property. Debtor filed its present bankruptcy proceeding to stop the foreclosure. Debtor intends to sell the Property and pay its creditors once the validity, amount, and priority of the claims can be determined.

15. Therefore, Debtor proposes that it be allowed to use the cash collateral for approximately 120 days (through March 31, 2020). I am familiar with the value of the Property and the value of real estate in the Beverly Hills area. I is my opinion that the value of the Property is in excess of $125,000,000 and that value provides more than adequate protection for all of the secured property claims which total about $70,000,000 and, as such, at this time no adequate protection payments should be required for any of the alleged secured claims. The Debtor believes that after the 120-day period of time it will have (and the creditors themselves will have) a better picture on who, if anyone, has a right to demand such adequate protection payments.

16. The Debtor is also concurrently filing an emergency motion for debtor financing to allow it to borrow funds from Ross in an amount up to $250,000 for the purpose of making up any shortfalls in the budget. The winter months are slowest months for rental income and it is anticipated that Debtor may need additional funds to pay its expenses over the next four months.

17. The Debtor proposes that there will be no admissions or waiver of any issues under this Motion, and all parties, including Debtor, will maintain all rights regarding the alleged secured claims which will be determined in the future. The Debtor proposes that replacement liens would be issued in the same validity, extent and priority as existed on the filing date.

18. The purpose of this Motion is to allow the Debtor to be permitted to use its "cash collateral", i.e., cash or cash-like equivalents, in such a way so as to comply with the

Bankruptcy Code and its strictures requiring the protection of secured claimants in and to the cash collateral. It is not the purpose of this Motion to improve the position of such secured claimants; nor is it the position of the Debtor that the interests of such claimants be adversely affected in any way.

20. Debtor anticipates that it will have yearly gross revenues in excess of $3,000,000 based upon its past performance . The revenues will be sufficient to pay all of the operating expenses.

21. In connection with the commencement of this case, I carefully scrutinized the Debtor's business operation and its requirements associated therewith. As set forth in the Budget, Debtor anticipates that it will be able to generate enough income to pay its expenses.

22. The winter months are Debtor's slowest months for rental income and it is anticipated that Debtor may need additional funds to pay its expenses at times over the next four months. As such, the Debtor is also filing an emergence motion for debtor financing in the amount of $250,000 to allow it to borrow funds for the purpose of making up any shortfalls in the budget. Debtor anticipates that $250,000 should be a sufficient to make up any shortfall in the next four months.

23. The Budget sets forth the minimum requirements of the Debtor to operate its business to accomplish a successful reorganization for all creditors. The Budget does not contemplate any "extraordinary" or "luxury" expense for which the Debtor will obtain prior written consent from the Lender or order of this Court. The Budget therefore contains the Debtor's basic requirements for operations and it is reasonable.

24. Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, as the ebbs and flows of Debtor's business are unpredictable, the needs of the business may fluctuate. Therefore, the Debtor requests Court authority to deviate from the total expenses contained in the Budget by no more than 20% on a

line by line basis, and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

25. In order for the Debtor to operate its business in accordance with the Budget, the Debtor must be able to use the revenues which are paid directly to the Debtor.

26. The Debtor has determined that it would clearly be in the overwhelming best interests of its estate and its creditors to continue to operate and maintain its business while the Property is being sold. The Court should authorize the Debtor to use cash collateral to continue to operate and maintain its business because the interests of the alleged secured creditors will be adequately protected.

27. The Debtor has already reduced and will continue with its efforts to reduce further its operating expenses as much as possible. Furthermore, the Debtor expects it will generate at least $3,000,000 annually in revenue based upon the rent for the Property – funds which would not be available to the alleged secured creditors if the Debtor ceased operating.

28. To provide the Lender with further adequate protection for the Debtor's use of cash collateral, the Debtor proposes to: (a) utilize the Budget attached as Exhibit "A" to Exhibit "1" hereto with a 20% line by line variance potential; and (b) provide the alleged secured creditors that are determined to have an actual security interest with replacement liens against the Debtor's post-petition assets with the same validity, priority, and scope as the respective secured creditors have against Debtor's pre-petition assets. Since the validity, amount, and priority of the liens has not yet been determined, all parties, including Debtor, will retain their rights to determine these issues in the future.

29. Pursuant to Local Bankruptcy Rule 4001-2 the Debtor informs the Court as follows:

A. Other than replacement liens, there is no provision in which the alleged secured creditors will be protected in the post-petition assets of the Debtor in the case of a decline in the

value of the pre-petition collateral.

      B.    There is no provision that binds the estate with respect to the validity, perfection or amount of the alleged secured creditor's prepetition lien or debt or waives claims against the secured creditor. All such issues will be determined in the future and all parties will retain their respective rights.

      C.    There is no a provision for a limitation of the estate's rights under 11 U.S.C. Section 506(c).

      D.    There is currently no provision for monthly adequate protection payments to be made for the first 120 days.

      E.    There is a "carve out" for Debtor's attorney's fees in the amount of $7,500 per month that is proposed in the budget. No payments will be made to counsel until there is a further order of this Court regarding such compensation. The funding will instead be held in a separate account of the Debtor pending such order.

      F.    There will be no current payments to any alleged creditors until the amount, priority and security of the alleged claims can be determined.

      G.    A copy of the Statement Regarding Cash Collateral or Debtor in Possession Financing that is required under Bankruptcy Court Local Rule 4001-2 is attached to the Ross Declaration as "Exhibit "2".

///

///

///

///

///

30. In order to provide maximum notice of this Emergency Motion, concurrently with the filing of this Motion, the Debtor served a copy of the Notice of this Emergency Motion, the Emergency Motion as ordered by the Court.

Executed at Los Angeles, California this 27th day of November 2019.

I declare under penalty of perjury that the preceding is true and correct under the laws of the United States of America and the State of California.

_____
Leonard Ross, Declarant

# EXHIBIT 1

1  ROBERT M. YASPAN, SBN 051867
   JOSEPH G. McCARTY, SBN 151020
2  DEBRA R. BRAND, SBN 162285
   LAW OFFICES OF ROBERT M. YASPAN
3  21700 Oxnard Street, Suite 1750
   Woodland Hills, California 91367
4  Telephone: (818) 905-7711
5  Facsimile: (818) 501-7711

6  *[Proposed] General Counsel for Debtor-in-Possession*

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11 IN RE:                                    ) Chapter No.: 11
                                             )
12                                           ) Case No.: 2:19-bk-23823-VZ
   TBH19 LLC, a Delaware limited liability   )
13 company                                   )
                                             ) ORDER (A) AUTHORIZING DEBTOR TO USE
14         Debtor                            ) CASH COLLATERAL ON AN INTERIM
                                             ) BASIS PENDING A FINAL HEARING; (B)
15                                           ) GRANT REPLACEMENT LIENS; AND (C)
                                             ) SET FINAL HEARING
16                                           )
                                             ) <u>INTERIM HEARING DATE</u>
17                                           ) Date:  [To Be Set]
                                             ) Time:  [To Be Set]
18                                           ) Place: Courtroom 1368
                                             )        255 E. Temple
19                                           )        Los Angeles, CA 90012
                                             )
20                                           )
                                             )
21                                           ) <u>FINAL HEARING DATE</u>
                                             ) Date:  [To Be Set]
22                                           ) Time:  [To Be Set]
                                             ) Place: Courtroom 1368
23                                           )        255 E. Temple
                                             )        Los Angeles, CA 90012
24                                           )
                                             )
25                                           )
                                             ) CALENDAR NO.
26 _____

27

28

                                        1

Case 2:19-bk-23823-VZ    Doc 13    Filed 11/27/19    Entered 11/27/19 17:05:21    Desc
Main Document    Page 12 of 19

**TO ALL INTERESTED PARTIES:**

A hearing was held on _____. in front of the Honorable Vincent P. Zurzolo, United States Bankruptcy Judge for the Central District of California, in Courtroom 1368 of the Courthouse located at 255 E. Temple Street, Los Angeles, California 90012, for the Court to consider the emergency motion (the "Motion") filed by TBH19 LLC, the Chapter 11 debtor and debtor in possession here (the "Debtor"), for entry of an order to: (A) use cash collateral on an interim basis pending a final hearing; (B) grant replacement liens; and (C) set a final hearing. Appearances were made as set forth on the record of this Court.

The Court, having considered the Motion and all papers filed by the Debtor in support of the Motion, and the oral arguments and statements of counsel made at the hearing on the Motion, and proper notice of the Motion and the hearing on the Motion having been provided, and good causes appearing therefore, hereby orders as follows:

1.  The Motion is granted upon the terms and conditions set forth in this Order.

2.  The Debtor is authorized to use cash collateral to pay all of the expenses set forth in the Budget attached hereto as Exhibit "A" for the interim period through _____, or such other later date as may be agreed upon in writing by the Debtor's alleged secured creditors, as set forth in the Motion or as ordered by the Court (the "Budgeted Period"). The validity, security, and priority of the alleged secured creditors will be determined by Court orders in the future and are not determined herein. The alleged secured creditors that are determined hereafter to have actual security interest in the Debtor's cash collateral are referred to herein as the "SECURED CLAIMANTS".

3.  The Debtor is authorized to deviate from the total expenses contained in the Budget for the Budgeted Period by no more than 20%, on a line by line basis, and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

4. As additional adequate protection of SECURED CLAIMANTS' interest in the cash collateral and the Debtor's use of the same during the Budgeted Period, SECURED CLAIMANTS are hereby granted a replacement lien upon all postpetition assets of the Debtor's estate (except any "Avoidance Actions" arising under Section 544, 545, 546, 547, 548, 549, 550 or any similar provision of the Bankruptcy Code) to the extent of the Debtor's use of cash collateral during the Budgeted Period, with such replacement liens(s) to have the same extent, validity and priority, if any, as the SECURED CLAIMANTS' lien upon the Debtor's pre-petition assets.

5. A carve-out for Debtor's attorneys' fees in the amount of $7,500.00 a month. Such funds shall not be paid until the Court has entered an appropriate order regarding same. However, such funding shall be placed in a separate debtor in possession account pending the use.

6. A further interim hearing on the continued use of cash collateral shall take place on _____ in Courtroom 1568.

7. The Debtor shall provide notice of the further interim hearing, and shall file a proof of service, by no later than _____.

8. The Debtor shall submit additional evidence in support of the continued use of cash collateral by no later than _____. Such additional evidence shall include, at a minimum, an updated budget and updated financial projections.

///

///

///

///

3

9. Any opposition to use the cash collateral beyond _____, shall be submitted no later than _____. The Debtor's reply, if any, shall be submitted by no later than _____.

**IT IS SO ORDERED**.

Dated: _____

HONORABLE VINCENT P. ZURZOLO
UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT A

**120 Day Projections for TBH19, LLC**
From November 24, 2019 to March 24, 2020

| | November | December | January | February | March | Cumulative |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Lease Income (See Note 1) | $ - | $ 120,000.00 | $ 180,000.00 | $ 240,000.00 | $ 600,000.00 | $ 1,140,000.00 |
| Lease Related income | $ - | $ 4,000.00 | $ 6,000.00 | $ 12,000.00 | $ 12,000.00 | $ 34,000.00 |
| Branding | $ - | $ - | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $ 180,000.00 |
| Security Services | $ - | $ 6,000.00 | $ 6,000.00 | $ 18,000.00 | $ 18,000.00 | $ 48,000.00 |
| Other | $ - | $ 122,000.00 | $ 120,000.00 | $ 240,000.00 | $ - | $ 482,000.00 |
| **Total Income** | $ - | $ 252,000.00 | $ 372,000.00 | $ 570,000.00 | $ 690,000.00 | $ 1,884,000.00 |
| **Expense** | | | | | | |
| Expense Rembursement, Miscellaneous | $ (1,500.00) | $ (3,500.00) | $ (3,500.00) | $ (3,500.00) | $ (3,500.00) | $ (15,500.00) |
| Auto Expense | $ (50.00) | $ (150.00) | $ (150.00) | $ (150.00) | $ (150.00) | $ (650.00) |
| Franchise Tax | $ (50.00) | $ (100.00) | $ (100.00) | $ (100.00) | $ (100.00) | $ (450.00) |
| Property Tax | $ (1,100.00) | $ (5,500.00) | $ (5,500.00) | $ (5,500.00) | $ (5,500.00) | $ (23,100.00) |
| Leasing Expenses | $ (750.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (15,000.00) | $ (21,750.00) |
| Supplies: Gardening, Pool, Misc. | $ - | $ (800.00) | $ (800.00) | $ (800.00) | $ (600.00) | $ (3,000.00) |
| Independent Contractors | $ (200.00) | $ (400.00) | $ (400.00) | $ (400.00) | $ (400.00) | $ (1,800.00) |
| Repairs and Maintenance | $ (750.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (8,750.00) |
| Property Insurance | $ - | $ - | $ (28,522.00) | $ - | $ - | $ (28,522.00) |
| Office Expense | $ (300.00) | $ (909.00) | $ (909.00) | $ (909.00) | $ (909.00) | $ (3,936.00) |
| Salaries and Wages | $ (1,462.00) | $ (7,316.00) | $ (6,312.00) | $ (7,316.00) | $ (7,316.00) | $ (29,722.00) |
| Payroll Tax and Fees | $ (372.00) | $ (1,862.00) | $ (1,862.00) | $ (1,862.00) | $ (1,490.00) | $ (7,448.00) |
| Telephone | $ (150.00) | $ (300.00) | $ (300.00) | $ (300.00) | $ (300.00) | $ (1,350.00) |
| Internet Expenses | $ (200.00) | $ (500.00) | $ (500.00) | $ (500.00) | $ (500.00) | $ (2,200.00) |
| Pest Control | $ (150.00) | $ (200.00) | $ (200.00) | $ (200.00) | $ (200.00) | $ (950.00) |
| Security Services | $ - | $ (1,000.00) | $ (3,000.00) | $ (7,000.00) | $ (7,000.00) | $ (18,000.00) |
| Interest | $ - | $ - | $ - | $ - | $ - | $ - |
| Independent Manager Fee | $ - | $ (1,650.00) | $ - | $ - | $ - | $ (1,650.00) |
| **TOTAL EXPENSES** | $ (7,034.00) | $ (28,187.00) | $ (56,055.00) | $ (32,537.00) | $ (44,965.00) | $ (168,778.00) |
| Profit/ Loss Before Adminstrative Expenses | $ (7,034.00) | $ 91,813.00 | $ 123,945.00 | $ 207,463.00 | $ 555,035.00 | $ 971,222.00 |
| Preparation of MOR fees | $ (350.00) | $ (350.00) | $ (350.00) | $ (350.00) | $ (350.00) | $ (1,750.00) |
| US Trustee Fees | $ - | $ (650.00) | $ (650.00) | $ (650.00) | $ (650.00) | $ (2,600.00) |
| Carve Out for DIP Attorneys Fees | $ - | $ (7,500.00) | $ (7,500.00) | $ (7,500.00) | $ (7,500.00) | $ (30,000.00) |
| **Adjusted Profit/ Loss** | $ (7,384.00) | $ 83,313.00 | $ 115,445.00 | $ 198,963.00 | $ 546,535.00 | |
| **Cumulative Adjusted Profit/ Loss** | $ (7,384.00) | $ 75,929.00 | $ 191,374.00 | $ 390,337.00 | $ 936,872.00 | |

Note 1: Lease payment from related party, Leonard Ross, has been paid for the prior referenced above in the amount of 475,000 which is not included on this schedule.

# EXHIBIT 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Robert M. Yaspan, SBN 051867<br>Joseph G. McCarty, SBN 151020<br>Debra R. Brand, SBN 162285<br>Law Offices of Robert M. Yaspan<br>21700 Oxnard Street, Suite 1750<br>Woodland Hills, CA 91367<br>Telephone: (818) 905-7711<br>Facsimile: (818) 501-7711<br><br>☐ Individual appearing without attorney<br>☒ Attorney for: [Proposed] for Debtor-in-Possession | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>TBH19 LLC, a Delaware limited liability company<br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:19-bk-23823-VZ<br>CHAPTER: 11<br><br>**STATEMENT REGARDING**<br>**CASH COLLATERAL OR**<br>**DEBTOR IN POSSESSION FINANCING**<br>**[FRBP 4001; LBR 4001-2]**<br><br>DATE:<br>TIME:<br>COURTROOM: 1368<br>ADDRESS:    255 E. Temple Street<br>                Los Angeles, CA 90012 |
|---|---|

Secured party(ies):

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both. The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|
| ☐ (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | | |
| ☐ (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br>☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br>☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2015                                                    Page 1                                            F 4001-2.STMT.FINANCE

| | | | |
|---|---|---|---|
| *Continued from page 1* ☒ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | 14 | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay" ☐ Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)" ☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| | **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No. (if applicable)** |
| ☒ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | 15 | 17 |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

| | | |
|---|---|---|
| 11/27/2019 | Robert M. Yaspan | *[signature]* |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2015 — Page 2 — F 4001-2.STMT.FINANCE